USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _07/26/2022_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
MCGRAW HILL LLC, et al., :
:
:
Plaintiffs, :
: 20-cv-0356 (LJL)
-v- :
: AMENDED OPINION
DOE 1, et al., : AND ORDER
:
Defendants. :
:
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiffs McGraw Hill LLC ("McGraw Hill"), Pearson Education, Inc. ("Pearson"), and Cengage Learning, Inc. ("Cengage," and, collectively with McGraw Hill and Pearson, "Plaintiffs") are three educational publishers within the United States. Plaintiffs filed this motion for default judgment on its copyright and trademark claims against two defendants, Rosa Pineda and Ozodbek Abdulazizov ("Defendants"). Dkt. No. 84; Dkt. No. 96.

For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs are three educational publishers in the United States. They publish a range of digital and physical educational content, including textbooks, for professionals and students at secondary, post-secondary, and graduate institutions. *See* Dkt. No. 62 ("Amended Complaint" or "AC") ¶ 2. Plaintiff McGraw Hill LLC is a Delaware limited liability company. Plaintiffs Pearson Education, Inc. and Cengage Learning, Inc. are Delaware corporations. Defendants are individual merchants, Rosa Pineda and Ozodbek Abdulazizov, who have sold textbooks on the online platforms eBay and Amazon ("Online Storefronts"). *Id.* ¶ 3. Plaintiffs have a number of copyright registrations and trademark registrations for their textbooks. Dkt. Nos. 7, 10, 11 ¶¶ 5–

6; *see also* AC Ex. B, Ex. C.  Defendants have advertised, offered to sell, and sold Plaintiffs' books on their Online Storefronts.  AC ¶ 5.  Plaintiffs allege that they have purchased textbooks from Defendants' Online Storefront that Plaintiffs determined to be counterfeit.  AC ¶¶ 59–60, 65–67; *see also* Dkt. Nos. 7, 10, 11 ¶ 8.  Plaintiffs bring this complaint for damages and injunctive relief to stop Defendants' infringing uses of their copyright and trademarks.  AC ¶ 5.

## PROCEDURAL HISTORY

Plaintiffs initiated this action by complaint on January 15, 2020.  Dkt. No. 86 ("Fleischman Decl." or "Fleischman Declaration") ¶ 8.  The complaint named twenty defendants, including the two Defendants here.  *See* Dkt. No. 1.  Plaintiffs simultaneously filed an application for a temporary restraining order ("TRO") and an order to show cause.  Dkt. No. 86 ¶ 8.  Subsequently, the Court, per Judge Castel, sitting in Part I, entered the TRO on January 15, 2020.  Dkt. No. 17 ("*Ex Parte* Order").  The *Ex Parte* Order authorized service by electronic mail.  *Id.* at 10.  Plaintiffs served Defendants on January 23, 2020 with the original Complaint, Summons, *Ex Parte* Order, and Plaintiffs' application.  Fleischman Decl. ¶ 8; Dkt. No. 16.  Plaintiffs provided a certificate of service on January 24, 2020.  Dkt. No. 16.  Judge Rakoff extended the TRO for fourteen days, until February 12, 2020, that same day.  Dkt. No. 18.

On February 4, 2020, this case was reassigned to the undersigned.

On February 11, 2020, this Court held a hearing on the Order to Show Cause for a Preliminary Injunction.  Fleischman Decl. ¶ 9.  Defendants did not appear at the hearing.  On February 12, 2020, the Court entered a Preliminary Injunction against Defendants.  *Id.*  Between February 13, 2020 and July 24, 2020, Plaintiffs moved to voluntarily dismiss fifteen of the twenty defendants in the original complaints.  *See* Dkt. Nos. 43, 51, 56.  On October 9, 2020,

Plaintiffs filed an amended complaint against the five remaining defendants.[1]  Between December 11, 2020 and December 28, 2020, Plaintiffs moved to voluntarily dismiss all but three Defendants.  *See* Dkt. Nos. 71, 73.  The Clerk of the Court issued a Certificate of Default against the three remaining defendants on May 27, 2021.  Dkt. No. 82.  On September 29, 2021, Plaintiffs filed a Motion for Default Judgment, Permanent Injunction, and Post-Judgment Relief.  Dkt. No. 84.[2]  That same day, Plaintiffs filed a Memorandum of Law in support of their motion.  *See* Dkt. No. 85.[3]  Plaintiffs filed a request to amend the default judgment on June 29, 2022.  *See* Dkt. No. 96.  The Court grants Plaintiffs' request to amend and considers the amended motion for default judgment below.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment.  *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see also* Fed. R. Civ. P. 55(a).  The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to

---

[1] The Amended Complaint also added two named defendants associated with defendant Delhi Bookstore, Inc.

[2] Plaintiffs filed a Stipulation as to defendant Rauni Pujols, Dkt. No. 91, and a Notice of Withdrawal of the Motion for Default Judgment with respect to defendant Pujols on March 17, 2022 and April 1, 2022, respectively.  Plaintiffs' amended motion for default is only against the two remaining defendants.  *See* Dkt. No. 96.

[3] Plaintiffs also filed a motion to seal pursuant to Federal Rule of Civil Procedure 5.2(a)(4), requesting that documents containing Defendants' full financial account numbers be sealed.  *See* Dkt. No. 83.  The Court grants Plaintiffs' motion to seal.

which the court decides it is entitled, to the extent permitted" by the pleadings. *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b). Whether entry of default judgment at the second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law. *See Mickalis Pawn Shop*, 645 F.3d at 137.

While a defendant who defaults admits the well-pleaded factual allegations in a complaint, because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action." *Id.* (internal quotation marks and citation omitted); *see also Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Therefore, the Court is "required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party later challenging the entry of a default judgment must satisfy the "good cause shown" standard in Federal Rule of Civil Procedure 55(c), which "requires a court to weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 454–55 (2d Cir. 2013).

The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Group Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019). A default judgment entered on well-pleaded allegations does not reach the issue of damages, and a plaintiff "must therefore substantiate [her] claim for damages

with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd* 691 F. App'x 8 (2d Cir. 2017) (summary order).

To determine the amount of damages that should be awarded on a default judgment, Federal Rule of Civil Procedure 55(b)(2) "leaves the decision of whether a hearing is necessary to the discretion of the district court." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012). And "[w]here, on a damages inquest, the plaintiff makes a damages submission and the defaulting defendant makes no submission in opposition and does not request a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs." *Id.*

## DISCUSSION

Plaintiffs seek default judgment on 1) copyright infringement claims under 17 U.S.C. §§ 101 *et seq.*, and 2) trademark counterfeiting claims under 15 U.S.C. §§ 1051 *et seq.* as against Defendants.

As a preliminary matter, this Court has personal jurisdiction over both of the defendants. New York's long-arm statute establishes personal jurisdiction over any person who "transacts any business within the stat or contracts anywhere to supply goods or services in the state." N.Y.C.P.L.R. § 302(a)(1). Plaintiffs must demonstrate that Defendants each transacted business within New York, and that the claim asserted arises from that business activity. *Spin Master*, 463 F. Supp. 3d at 362. A single sale in the state satisfies the long-arm statute. *Id.* at 363 (citing *WowWee Grp.*, 2019 WL 137540, at *3). Plaintiffs allege that Defendants have each sold and shipped infringing goods into New York. Dkt. No. 86 ¶ 12. Because the Defendants have affirmed Plaintiffs' allegations through their default, personal jurisdiction is established under Section 302(a)(1).

I. **Liability**

Plaintiffs seek a default judgment on both their copyright and trademark infringement causes of action.[4]  Dkt. No. 85 at 1–2; Dkt. No. 96 at 21.  To prevail on the copyright claim, a plaintiff must demonstrate ownership of a valid copyright and unauthorized copying of the copyrighted work.  *See Spin Master*, 463 F. Supp. 3d at 369 (citing *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003)).  Plaintiffs pleaded facts regarding and produced evidence of their exclusive copyright ownership.  AC ¶¶ 25, 70, Ex. B.  This is sufficient to make out a *prima facie* case of copyright infringement.  Plaintiffs also provide evidence that 1) they purchased books purported to be authentic copies of their copyrighted material from Defendants that were in fact counterfeit, and 2) that the products were similar enough to Plaintiffs' material that customers believed they had purchased one of Plaintiffs' products online but later realized its poor quality and the possibility it was a counterfeit.  Dkt. No. 6¶¶ 18, 20, Ex. 2, Ex. 3.  Plaintiffs have established liability by showing that Defendants actually copied their works and that the copies were substantially similar because they prompted customers to purchase them thinking they were authentic works.  *See Spin Master*, 463 F. Supp. 3d at 369 (actual copying may be demonstrated by direct or indirect evidence).

To prevail on the trademark claim, Plaintiffs Cengage and McGraw Hill must demonstrate that they have valid marks entitled to protection, and that Defendants' use of the marks is likely to cause consumers confusion as to the origin of Defendants' goods.  *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).  Similar to the claim above, Plaintiffs have pleaded facts regarding and provided a list of their registered trademarks.  AC ¶¶ 26, 76, Ex. C.  Plaintiffs also pleaded facts regarding Defendants' use of Plaintiffs' marks to confuse

---

[4] Pearson only asserts copyright claims, not trademark claims, in this motion.  Plaintiffs Cengage and McGraw Hill assert trademark and copyright claims.  *See* Dkt. No. 96 at 21.

online purchasers and cause mistaken association with Defendants' products and Plaintiffs' marks.  AC ¶ 45, 48.

## II. Damages

Plaintiffs seek statutory damages against Defendants on their claims for willful copyright infringement and willful trademark counterfeiting.  *See* AC at 19–20; Dkt. No. 96 at 5.  They ask for total statutory damages of $6,150,000 against Pineda, of which $150,000 are copyright damages and $6 million are trademark damages, and $610,000 against Abdulazizov, of which $210,000 are copyright damages and $400,000 are trademark damages.  Dkt. No. 96 at 5. Plaintiffs must substantiate their claim for damages in a default judgment, even when well-pleaded allegations establish a defendant's liability.  *Spin Master*, 463 F. Supp. 3d at 370 (citing *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd*, 691 F. App'x 8 (2d Cir. 2017)).

### A. Copyright Damages

The Copyright Act provides three types of damages for plaintiffs who have been injured by copyright infringement: (1) actual damages, including the infringer's profits; (2) statutory damages "not less than $750 or more than $30,000 as the court considers just"; or (3) if the court finds that the infringement was willful, "a sum of not more than $150,000."  17 U.S.C. § 504(b)–(c).  Plaintiffs may elect to recover statutory damages instead of actual damages.  *Id.* § 504(c)(1). Courts generally look to seven factors when setting statutory damages: "(1) 'the expenses saved and the profits reaped,' (2) 'the revenues lost by the plaintiff,' (3) 'the value of the copyright,' (4) 'the deterrent effect on others besides the defendant,' (5) 'whether the defendant's conduct was innocent or willful,' (6) 'whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced,' and (7) 'the potential for

7

discouraging the defendant.'" *Manno v. Tenn. Prod. Ctr., Inc.*, 657 F. Supp. 2d 425, 433 (S.D.N.Y. 2009) (quoting *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)).

The first two factors relate to the monetary gains incurred or losses sustained by Defendants' infringement and are considered in tandem. Plaintiffs use aggregate sales records from eBay to demonstrate that the Defendants sold a total of 381 items for $13,590 in revenue. The full extent of Defendants' expenses saved and profits reaped is unknown because Defendants have failed to appear in court proceedings and participate in discovery. Some courts have found that the inability to calculate profits with precision renders the factor "neutral" in the analysis. *See Streamlight, Inc. v. Gindi*, 2019 WL 6733022, at *12 (E.D.N.Y. Oct. 1, 2019) (citing generally *Spin Master, Inc. v. Amy & Benton Toys & Gifts Co.*, 2019 WL 464583, at *6 (S.D.N.Y. Feb. 6, 2019) (finding that defendants' default frustrated the ability to "meaningfully assess" factors one and two)); *see also WowWee Grp. v. Meirly*, 2019 WL 1375470, at *10 (S.D.N.Y. Mar. 27, 2019) (finding that only factors three through seven could be evaluated); *Bumble and Bumble, LLC v. Pro's Choice Beauty Care, Inc.*, 2016 WL 658310, at *4 (S.D.N.Y. 2016). Statutory damages are available precisely to spare the plaintiff from the requirement of proving its damages with exactitude. *See Castillo v. G & M Realty L.P.*, 950 F.3d 155, 172 (2d Cir. 2020) ("Unlike actual damages, statutory damages do not require the precise monetary quantification of injury."); *Spin Master*, 463 F. Supp. 3d at 372. Dkt. No. 86 ¶¶ 16, 21. It is appropriate to use aggregate sales records as a basis for considering statutory damages if the aggregate records do not suggest unduly inflated damages. *See Ermenegildo Zegna Corp. v. 56th St. Menswear, Inc.*, 2008 WL 4449533, at *5 (S.D.N.Y. Oct. 2, 2008) (noting that in default

judgment cases "every reasonable inference" should be drawn when considering the statutory damages factors).

Plaintiffs offer evidence that indicates total sales by Defendant Pineda of $8,000 (225 items) through one of the three platforms associated with Pineda.  Dkt. No. 86 ¶ 16.  Plaintiffs also allege that Defendant Abdulazizov sold $5,590 (156 items) through his storefronts.  *Id.* ¶ 21. Plaintiffs urge that, without full discovery, the sales records only reflect a subset of potential aliases and storefronts through which Defendants sold infringing copies.  *See, e.g.*, *id.* ¶ 15.  This Court has held that "[t]o the extent possible, statutory damages 'should be woven out of the same bolt of cloth as actual damages.'"  *Spin Master*, 463 F. Supp. 3d at 371 (quoting *Gucci Am.*, 315 F. Supp. 2d at 520).  Thus, aggregate sale evidence is an appropriate starting point.  Plaintiffs offered an allegation that Defendants sold the counterfeit books at a significant discount.  *See* Compl. ¶ 68 (providing one example of a counterfeit book priced at $29.00 that would retail for $157.93).  Drawing "every reasonable inference" in Plaintiffs' favor, a similar factor of 550% can provide an estimate of Plaintiffs' lost revenue.  *See Ermenegildo Zegna Corp.*, 2008 WL 4449533, at *5.  An estimate of Plaintiffs lost revenue is $44,000 from Defendant Pineda's infringing activity and $30,745, rounded to $31,000, from Defendant Abdulazizov's infringing activity.

The third factor is the value of the copyright.  Courts can consider the "well-known reputations" of companies to determine that their copyrights and trademarks "are indeed valuable."  *Elsevier Inc. v. Siew Yee Chew*, 2019 WL 74606, at *10 n.7 (S.D.N.Y. Jan. 2, 2019) (quoting *Polo Ralph Lauren v. 3M Trading Co.*, 1999 WL 33740332, at *6 (Apr. 19, 1999)). Courts have recognized plaintiffs' reputation for "high-quality educational content" even when plaintiffs have not supplied specific information to the court.  *Id.*; *see also Pearson Educ, Inc. v.*

9

*Labos*, 2021 WL 4507530, at *4 (S.D.N.Y. Sept. 30, 2021).  Plaintiffs have alleged that they are among the leading educational publishers in the United States.  AC ¶ 2; Dkt. No. 7 ¶ 3; Dkt. No. 10 ¶ 3; Dkt. No. 11 ¶ 3.  On a motion for default judgment, this Court is required to accept these factual allegations as true and draw all reasonable inferences in the moving party's favor.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  Therefore, the Court finds the copyrights to be highly valuable.  *See, e.g.*, *Spin Master*, 463 F. Supp. 3d at 373; *Streamlight*, 2019 WL 6733022, at *13.

Factor four is the deterrent effect on others, which courts have alternatively described as the scale of infringement.  *See Spin Master*, 463 F. Supp. 3d at 373.  Defendants each used multiple Online Storefronts with access to a vast number of customers, which indicates a greater scale of infringement than the use of only one online platform.  *See* AC ¶¶ 12, 16; *Rolex Watch, U.S.A., Inc. v. Pharel*, 2011 WL 1131401, at *5 (E.D.N.Y. Mar. 11, 2011) (finding that the use of three websites to sell counterfeit goods supported higher damages), *adopted*, 2011 WL 1130457 (E.D.N.Y. Mar. 28, 2011).  Pineda and Abdulazizov sold 225 and 156 items through their storefronts, respectively.  Dkt. No. 86 ¶¶ 16, 21.  While the volume of sales alone does not indicate a large scale of infringement, two facts weigh in favor of Plaintiffs, and a need for general deterrence.  The first is the use of Online Storefronts with a "virtually limitless number of customers."  *Spin Master*, 463 F. Supp. 3d at 373 (quoting *Streamlight*, 2019 WL 6733022, at *13).  The second is that Plaintiffs pleaded allegations that Defendant Abdulazizov was buying discounted counterfeit textbooks from online distributors and reselling them.  Dkt. No. 86 at ¶ 21.  The presence of multiple actors indicates both a greater scale of infringement and the need for general deterrence, to the extent possible.  Factor four weighs in favor of Plaintiffs.

The fifth factor, willfulness, weighs in favor of Plaintiffs.  Willful infringement occurs when the defendant was "actually aware of the infringing activity" or the defendant's actions were the result of "reckless disregard" for, or "willful blindness" to the copyright holder's rights. *Island Software and Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 357, 263 (2d Cir. 2005). The use of virtually identical marks can establish willfulness.  *Spin Master*, 463 F. Supp. 3d at 374 (citing *WowWee Grp.*, 2019 WL 1375470, at *10)).  Here, Defendants used indistinguishable marks to commercially distribute counterfeit products.  AC ¶¶ 43–45, 47.  Defendant Pineda had additional reason to know that her activity infringed on Plaintiffs' copyright because she was under permanent injunction to cease infringing use of other works for which Plaintiffs hold the copyright.  *See* AC ¶ 60; *Cengage Learning, Inc.*, 2018 WL 3549877.

The sixth factor is the degree of cooperation by the defendant.  This Court has held that the mere fact of default should not increase a defendant's statutory damages.  *Spin Master*, 463 F. Supp. 3d at 374.  This Court also noted that, where a defendant acted to conceal their identity, the concealment would constitute a "traditional aggravating factor in statutory damages." *Id.* (quoting *Sara Lee*, 36 F. Supp. 2d at 168).  That is the case here.  Both Defendants used false names to register their accounts on online platforms.  Dkt. No. 86 ¶¶ 16, 21.  Plaintiffs aver that the Defendants' failure to participate in comprehensive discovery stymied Plaintiffs ability to discover the extent of Defendants' infringing activity.  AC ¶¶ 61, 67.  The Court will not speculate as to the number of sales or accounts that the Defendants may have made outside of the evidence that Plaintiffs presented.  *Cf. Spin Master*, 43 F. Supp. 3d at 372 & n.7 (declining to consider conclusory allegations that defendants used additional online platforms in damages calculations).  However, Defendants' use of multiple accounts and false names indicates action to conceal their identities that weighs in favor of Plaintiffs.

The need to deter Defendants themselves (the seventh factor) counsels in favor of higher damages. Defendant Pineda has previously defaulted in a copyright action brought against her. *See Cengage Learning, Inc. v. Doe 1*, 2018 WL 3549877, at *1 (granting plaintiffs' request for a permanent injunction and maximum statutory damages of $8 million for four trademark violations against Pineda). The infringement here post-dated the lawsuit against her in *Doe 1*. The interests of specific deterrence support a high statutory damages award against her. Abdulazizov has not previously been a defendant in a copyright or trademark infringement action. Although there is still an interest in "sending a signal" to this defendant, "there is law that 'the need for high statutory damages as a specific deterrent is less pressing' when the Court is simultaneously granting a permanent injunction." *Spin Master*, 463 F. Supp. 3d at 374 (first quoting *Streamlight*, 2019 WL 6733022, at *14; and then citing *WowWee Grp.*, 2019 WL 1375470, at *10).

### B. Recovery Under Copyright and Trademark Theories

Plaintiffs seek damages under both Copyright Act, 17 U.S.C. §504(c), and the Lanham Act for trademark infringement, 15 U.S.C. § 1117(a)–(c). Plaintiffs allege that Defendants used counterfeit marks to sell infringing products, and seek statutory damages under the Lanham Act for each counterfeit mark and copyright damages under the Copyright Act for each additional infringing copy. AC ¶¶ 77–82, Ex. B; *see also Elsevier Inc.*, 2019 WL 74606, at *10 (accepting plaintiffs' request for one Lanham Act damages award as to each plaintiff whose textbook was sold and a copyright award for each additional textbook because "there will not be a double recovery for any one infringed work"). Under the Lanham Act, statutory damages range from $1,000 to $200,000 per mark for non-willful violations and up to $2 million per mark for willful violations. 15 U.S.C. 1117(c). Some courts have only permitted recovery under the Copyright Act when the unauthorized sale of copyrighted material (i.e., textbook content) is the "substantial

12

cause" of plaintiffs' damages. *Cengage Learning, Inc. v. Shi*, 2017 WL 1063463, at *3; *see also Cengage Learning, Inc. v. Globonline SDN*, 2018 WL 1989574, at *2–3 (citing *Cengage Learning*, 2017 WL 106363 and other cases, concluding that a plaintiff may not recover under both the Lanham Act and the Copyright Act when damages are "coextensive"). *But see Cengage Learning, Inc. v. Doe 1*, 2018 WL 3549877 (permitting recovery under both the Copyright and Lanham Acts); *Pearson Educ.*, 2021 WL 4507530, at *5.

Duplicative recovery for the same injury is inappropriate. *See Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995) ("[P]laintiff seeking compensation for the same legal injury under different legal theories is of course only entitled to one recovery."). Here, Plaintiffs allege distinctive injuries from the use of Plaintiffs' registered marks to advertise and further their businesses, *see* AC ¶ 79, and from Defendants' sale of Plaintiffs' copyrighted material. Defendants' use of Plaintiffs' trademarks infringed on their exclusive right to use their marks in commerce and to advertise without fear of confusion among consumers. 15 U.S.C. § 1114(1); *see also Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978) ("It is well settled that the crucial issue in an action for trademark infringement . . . is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question."). Part of the damage suffered by the victim of trademark infringement is damage to reputation. The consumer who purchases an inferior product believing it originated with the plaintiff may no longer be willing to purchase (or pay the same price to purchase) all other products produced by that plaintiff. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) (holding that federal trademark law helps assure the mark holder that it "will reap the financial, reputation-related rewards associated with a desirable product" rather than an imitator (quoting *Qualitex Co. v.*

*Jacobson Prods. Co.*, 514 U.S. 159, 163–164 (1995))); *Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 398 (2d Cir. 1995) (noting that the quality of an infringing defendant's product is relevant because the mark holder's "reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality").

Defendants' infringement of Plaintiffs' copyright, by contrast, violated Plaintiffs' rights in the exclusive distribution of their work of authorship. 17 U.S.C. § 106. The interests may be personal as well as commercial. The author has an interest in whether and to whom to publicize her work. *Cf. Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 555 (1985) (holding that the author of unpublished materials holds both a "personal interest in creative control" and a "property interest in exploitation of prepublication rights" protected by the Copyright Act); *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 88 (2d Cir. 2014) (noting that a copyrighted work's publication status provides judicial gloss on the nature of the copyrighted work because of the author's right to control the first public appearance of his work). The injury from the two violations, and the wrong committed by them, are not necessarily coextensive. When a defendant violates a plaintiff's copyright and trademark in the sale of a book there are two separate wrongs. Moreover, although the plaintiff may suffer identical lost sales from the defendant's sale of counterfeit books sold under an appropriated trademark, there may be incremental damages suffered as a result of the trademark infringement not compensated for under the copyright claim and vice versa. Thus, the Court will award recovery under the Lanham Act for each counterfeit mark and under the Copyright Act for each additional textbook sold with that mark.

The factors that courts consider in awarding statutory damages under the Lanham Act are the same as those under the Copyright Act. *See Sara Lee Corp.*, 36 F. Supp. 2d at 166 (finding

14

an analogy in the Copyright Act for the calculation of statutory damages under the Lanham Act for trademark violations). Thus, the Court will not repeat the analysis here.

### C. Statutory Damages Award

Plaintiffs seek a total of $6,150,000 in damages against Rosa Pineda and a total of $610,000 in damages against Ozodbek Abdulazizov. Dkt. No. 86 ¶ 23. Plaintiffs offer evidence demonstrating sales revenues of $8,000 for Rosa Pineda and $5,590 for Ozodbek Abdulazizov—several orders of magnitude less than the requested maximum statutory damages. Based on Defendant Pineda's multiple platforms and repeated infringing activity, the Court awards damages against her in the amount of $700,000: $200,000 under each of three claims under the Lanham Act, and $100,000 for one claim under the Copyright Act. This amount is higher than trebling the estimated lost revenue (which would be $132,000 total) because of her repeated infringing conduct, particularly in the face of the prior order. *See Streamlight*, 2019 WL 6733022, at *14 (noting that a statutory award should incorporate a punitive component in the case of willful infringement). This amount is consistent with the range of awards in this Circuit where the defendant has willfully infringed on the plaintiff's mark or copyright. *See, e.g., All-Star Mktg. Grp. v. Media Brands Co.*, 775 F. Supp. 2d. 613, 624–625 (S.D.N.Y. 2011) (citing cases awarding a range of $125,000 to $250,000 per mark infringed when limited concrete information existed and infringement was willful); *Cengage Learning, Inc. v. Bhargava*, 2017 WL 9802833, at *5 (finding that $50,000 per copyright infringement was appropriate when limited sales information was available and defendants coordinated in their infringing activity). *But see Hounddog Productions, LLC.*, 826 F. Supp. 2d at 631 (finding that $150,000 per infringement is appropriate when the defendant made a profit of over $100,000).

By contrast, the Court awards damages in the amount of $93,000 as against Defendant Abdulazizov: $22,000 for the two claims under the Lanham Act and $7,000 for each of the seven

15

claims under the Copyright Act. The factors the Court considered above weigh in favor of trebling damages as against Defendant Abdulazizov, and do not compel a higher damages award. *Cf. Spin Master*, 463 F. Supp. 3d at 375. Thus, the Court calculated the statutory damages award by trebling $31,000 (estimate of Plaintiffs lost revenue) to reach $93,000.

### III.  Permanent Injunction

Plaintiffs seek a permanent injunction enjoining Defendants from directly or indirectly infringing Plaintiffs' copyrights and trademarks. Dkt. No. 85 at 21. A Court may enter a permanent injunction if plaintiff has demonstrated: "(1) that it suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that the balance of hardships between the parties warrants a remedy in equity for the plaintiff; and (4) that the public interest would not be disserved." *Spin Master*, 463 F. Supp. 3d at 376 (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S. Ct. 1837 (2006)). A permanent injunction is appropriate in this case: All factors weigh in favor of Plaintiffs. Defendants' lack of cooperation with discovery requests and default makes it likely that they will continue infringing and that Plaintiffs have no adequate remedy at law. *Cf. Pearson Educ., Inc. v. Vergara,*) 2010 WL 3744033, at *4 (Sept. 27, 2010) ("A court may infer from a defendant's default that it is willing to, or may continue its infringement."). Defendants, as the infringers, cannot identify any hardships to weigh against Plaintiffs' hardships. *Spin Master*, 463 F. Supp. 3d at 376. Finally, the public has an interest in an accurate association between a mark and its goods. *Id.*

Plaintiffs seek to enjoin Defendants, their agents, and all those in active concert or participation with any of them who receive actual notice of the Order. Dkt. No. 88 at 5. Pursuant to Fed. R. Civ. P. 65(d)(2), the Court may enjoin third parties who receive actual notice

of the injunction and act in active concert or participation with Defendants or their agents. The Court grants the request to enjoin these parties.

## IV.  Post-Judgment Relief

Plaintiffs request that the Court dissolve the automatic stay and allow for the immediate enforcement of judgment pursuant to Federal Rule of Civil Procedure 62(a). Dkt. No. 96 at 23–24. Courts may dissolve the automatic stay if there "may be a risk that the judgment debtor's assets will be dissipated." *Spin Master*, 463 F. Supp. 3d at 385 (quoting Fed. R. Civ. P. 62 advisory committee's note (2018)); *see also Allstar Mktg. Grp., LLC v. 158*, 2019 WL 3936879, at *4 n.6 (S.D.N.Y. 2019). The Court grants Plaintiffs' request to dissolve the automatic stay.

Plaintiffs also request that the Court order Defendants to deliver "all copies of Plaintiffs' textbooks, other copyrighted works, or derivative works thereof" for destruction. *See* Dkt. No. 96 at 7. The Copyright Act authorizes courts to order the destruction of infringing products. *See* 17 U.S.C. § 503(b); *McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*, 323 F. Supp. 3d 488, 500 (S.D.N.Y. 2018). The Court orders that Defendants deliver all infringing copies of Plaintiffs' works to Plaintiffs for destruction.

The four thousand dollar ($4,000) bond that Plaintiffs submitted in connection with this case is hereby released to counsel for Plaintiffs, Oppenheim + Zebrak, LLP, at 4530 Wisconsin Avenues, NW, 5th Floor, Washington, DC 20016. The Court shall retain jurisdiction over the parties and this matter in order to enforce this Order.

## CONCLUSION

The motion for default judgment is GRANTED.

Plaintiffs are directed to file a proposed judgment consistent with this Opinion and Order by July 29, 2022.

The Clerk of Court is respectfully directed to close Dkt. Nos. 83, 84, 96.

SO ORDERED.

Dated: July 26, 2022
       New York, New York

                                              LEWIS J. LIMAN
                                     United States District Judge